UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------x
WEI HONG ZHENG as Administratrix of the
Estate of HAU WAI YIP; and KANG MEI **MEMORANDUM AND ORDER**
CHAN, Case No. 07-CV-4768 (FB) (JO)

      Plaintiffs,

  -against-

BEN T. WONG; FOONG CHING WONG
a.k.a. JENNY WONG; THE BOARD WOK,
INC. d.b.a. WOK & ROLL; YORK TOWN
TEAHOUSE, INC.; and TEAHOUSE OF
NEW JERSEY, INC.,

      Defendants.
--------------------------------------------------------x

*Appearances*
*For the Plaintiffs:*   *For Defendants Ben T. Wong; The Board Wok,*
ALBERT VAN-LARE, ESQ.   *Inc.; York Town Teahouse, Inc.; and Teahouse*
80 Wall Street, Third Floor   *of New Jersey:*
New York, NY 10005   RALPH A. SOMMA, ESQ.
  175 West Main Street, Suite One
  Babylon, NY 11702

  *For Defendant Foong Ching Wong:*
  NILS C. SHILLITO, ESQ.
  Stephen D. Hans & Associates, P.C.
  45-18 Court Square, Suite 403
  Long Island, NY 11101

**BLOCK, Senior District Judge:**

    Plaintiffs, Wei Hong Zheng ("Zheng"), as administratrix of the estate of Hau Wai Yip ("Yip"), and Kan Mei Chan ("Chan"), sue under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law

§ 290-301.¹ They allege that Yip and Chan – who worked at a restaurant in the Claridge Hotel Casino Hotel in Atlantic City, New Jersey – were discriminated against, and ultimately terminated, based on their race, sex and/or national origin; the complaint alleges that defendants Ben T. Wong ("Ben Wong"), The Board Wok, Inc. d.b.a. Wok & Roll ("Board Wok"), York Town Teahouse, Inc. ("York Town"), and Teahouse of New Jersey, Inc. ("Teahouse"), all employed Yip and Chan, and that defendant Foong Ching Wong a.k.a. Jenny Wong ("Jenny Wong") was their manager. In addition, Zheng alleges that defendant Ben Wong wrongfully withheld Yip's share of the profits from a mutual investment.

Now before the Court are two motions to dismiss pursuant to Federal Rule of Civil Procedure 12, one filed by Jenny Wong and the other by the remaining defendants. Taken collectively, the motions advance the following grounds for dismissal:

1. that service of process on the individual defendants (i.e, Ben Wong and Jenny Wong) was defective;

2. that plaintiffs' Title VII claims are barred by the statute of limitations;

3. that plaintiffs failed to administratively exhaust their Title VII claims against Ben Wong, York Town and Teahouse;

4. that Zheng's claims regarding his investment with Ben Wong do not fall within the Court's supplemental jurisdiction.

5. that the individual defendants cannot be held individually liable under Title VII;

6. that Board Wok, a New Jersey corporation, cannot be liable under the NYSHRL, and that, as a result, Jenny Wong cannot be held liable as an aider and abettor under the NYSHRL; and

---

¹Plaintiffs also sued under 42 U.S.C. § 1981 and the New York City Human Rights Law, N.Y.C. Admin. Code §§ 8-101 to 8-131; those claims have been withdrawn.

7. that Chan has failed to allege facts sufficient to make out a claim of sex discrimination.

At oral argument on July 9, 2009, the individual defendants agreed to withdraw their objections to service of process. In addition, the Court addressed defendants' statute of limitations argument and plaintiffs' response, raised in their papers opposing the motions to dismiss, that the limitations period should be equitably tolled. Concluding that the issue could not be resolved based solely on the pleadings, the Court converted the motions to dismiss on timeliness grounds into motions for summary judgment and gave the parties' additional time to submit evidence on that issue. *See* M&O of July 10, 2009, at 3-4. Plaintiffs responded by averring the factual bases for the claims of equitable tolling; defendants did not respond.

Thus, as matters now stand, defendants' motions fall into three categories: (1) motions for summary judgment based on the statute of limitations, (2) motions to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), and (3) motions to dismiss for failure to state a claim pursuant to Rule 12(b)(6). For the following reasons, the motions for summary judgment are denied; the Rule 12(b)(1) and 12(b)(6) motions are granted in part, and denied in part.

## MOTIONS FOR SUMMARY JUDGMENT

Plaintiffs concede that their administrative complaints with the New York State Division of Human Rights ("NYSDHR") were not filed within 300 days of the alleged discrimination, as required by 42 U.S.C. § 2000e-5(e)(1); Chan filed her complaint 364 days after her termination, while Yip filed his 332 days after his termination. They argue, however, that their claims are saved under the doctrine of equitable tolling. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982) ("We hold that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to

waiver, estoppel, and equitable tolling.").

Chan avers that the defendants failed to post the required notice of employee rights,[2] and that she did not learn of those rights until she spoke to an attorney. *See* Chan Aff. ¶ 11 ("Discrimination because of race or sex is not illegal in China and I did not know it to be illegal until I spoke to my attorney."); ¶ 13 ("My employer who is required to post the notice of Equal Employment Opportunity rights never did so."). In light of defendants' decision not to respond to plaintiffs' equitable tolling argument, the Court takes these facts as undisputed.

Although the Second Circuit has not directly spoken on the issue, five other circuit courts have held that an employer's failure to comply with the posting requirements set forth in Title VII and other federal anti-discrimination laws is sufficient to warrant equitable tolling. *See Mercado v. Ritz-Carlton San Juan Hotel, Spa & Casino*, 410 F.3d 41, 48 (1st Cir. 2005) ("[W]here appellants have asserted that no informational notices were posted and that they had no knowledge of their legal rights until informed by their attorney, they have met the threshold requirements for avoiding dismissal of their Title VII suit."); *EEOC v. Kentucky State Police Dep't*, 80 F.3d 1086, 1096 (6th Cir. 1996) ("If an employer fails to . . . post[ ] the required ADEA notices, the charge-filing period will not begin to run until the employee either retains an attorney or acquires actual knowledge of his rights under the ADEA." (citation and internal quotation marks omitted)); *Unterreiner v. Volkswagen of Am.*, 8 F.3d 1206, 1209 (7th Cir. 1993) ("Under some circumstances, a company's failure to post a notice of employees' rights under the ADEA may toll the statute of limitations."); *Callowhill v.*

---

[2]*See* 42 U.S.C. § 2000e-10(a) ("Every employer, employment agency, and labor organization, as the case may be, shall post and keep posted in conspicuous places upon its premises where notices to employees, applicants for employment, and members are customarily posted a notice to be prepared or approved by the Commission setting forth excerpts from or, summaries of, the pertinent provisions of this subchapter and information pertinent to the filing of a complaint.").

4

*Allen-Sherman-Hoff Co.*, 832 F.2d 269, 272 (3rd Cir. 1987) ("[A]n employer's neglect to post the notice . . . will toll the running of the period for filing the administrative charges, at least until the aggrieved person seeks out an attorney or acquires actual knowledge of his rights under the [ADEA]." (citation and internal quotation marks omitted)); *English v. Pabst Brewing Co.*, 828 F.2d 1047, 1049 (4th Cir. 1987) ("If an employer violates the posting requirement, the charging period is tolled until the plaintiff acquires actual knowledge of his rights or retains an attorney." (citation and internal quotation marks omitted)). Only the Tenth Circuit has adopted the contrary view. *See Wilkerson v. Siegfried Ins. Agency, Inc.*, 683 F.2d 344, 347 (10th Cir. 1982) (holding that failure to post notice will not warrant tolling absent "intent to actively mislead the plaintiff respecting the cause of action.").[3]

In accordance with the majority view, the Court holds that an employer's failure to post the required notices of anti-discrimination laws will equitably toll the 300-day limitations period until such time as the employee learns or reasonably should have learned of her rights through some other means. With respect to Chan, she does not state how long she waited to consult an attorney, but her administrative complaint was only two months late. The Court concludes that defendants' failure to post the required notices excuses at least that amount of delay.

As for Yip, he cannot attest to when he learned of his rights because he is deceased. Instead, Zheng avers that during the entire 300-day period, Yip was severely ill with the cancer that eventually took his life. *See* Zheng Aff. ¶ 6 ("Yip was totally consumed by his illness [and] could not pursue any legal matter."). As with Chan, defendants do not dispute Zheng's averment. Since

---

[3]The Second Circuit has, *in dicta*, embraced the inverse proposition – that *compliance* with posting requirements "alone may be sufficient to defeat an employee's equitable tolling claim, since a court can presume knowledge of statutory rights based on the notices." *Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 60 (2d Cir. 1986).

"[e]quitable tolling is generally considered appropriate . . . where a plaintiff's medical condition or mental impairment prevented her from proceeding in a timely fashion," *Zerilli-Edelglass v. New York City Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003), the Court concludes that Yip's serious, and ultimately terminal, condition tolled the 300-day period at least long enough to excuse the one-month delay in filing his administrative complaint.

## MOTIONS TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION

### A. Failure to Name Defendants

"A prerequisite to commencing a Title VII action against a defendant is the filing with the EEOC or authorized state agency of a complaint naming the defendant." *Johnson v. Palma*, 931 F.2d 203, 209 (2d Cir. 1991). If challenged by the defendant, the plaintiff bears the burden of proving compliance with this requirement. *See Hill v. Citibank Corp.*, 312 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2004) ("Once the defendant has challenged the condition precedent specifically and with particularity, the burden is on the plaintiff to prove that the condition precedent was satisfied.") Unlike the 300-day limitations period, this requirement is jurisdictional, *see, e.g., Bridges v. Eastman Kodak Co.*, 822 F. Supp. 1020, 1023 (S.D.N.Y. 1993) ("[A] district court generally has subject matter jurisdiction only over actions against those individuals named as respondents in an EEOC charge." (citing *Johnson*, 931 F.2d at 209)); therefore, the Court may rely on matters outside the pleadings without converting the motion to one for summary judgment. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside the pleadings.").

Plaintiffs' administrative charges named only Jenny Wong and Board Walk as respondents; Ben Wong, York Town and Tea House were not named. Plaintiffs argue, however, that

the Court should apply the "identity of interest" exception, which "permits a Title VII action to proceed against an unnamed party where there is a clear identity of interest between the unnamed party and the party named in the administrative charge." *Johnson*, 931 F.2d at 209. They argue that, for all practical purposes, Board Wok, York Town and Teahouse were the corporate alter egos of Ben Wong.

The "identity of interest" exception was adopted because EEOC charges "generally are filed by parties not versed in the vagaries of Title VII and its jurisdictional and pleading requirements." *Id.* Thus, as this Court noted in *Tarr v. Credit Suisse Asset Mgmt., Inc.*, 958 F. Supp. 785 (E.D.N.Y. 1997), it agrees with the majority of district courts in the Second Circuit that the exception "'only applies where plaintiff [was] not represented by counsel' at the time of the EEOC filing." *Id.* at 794 (quoting *Sharkey v. Lasmo (Aul Ltd.)*, 906 F. Supp. 949, 954 (S.D.N.Y. 1995)); *see also Alfano v. Costello*, 940 F. Supp. 459, 465 n.2 (N.D.N.Y. 1996) ("This exception to Title VII's jurisdictional and pleading requirements provides leniency to individuals filing EEOC complaints *pro se*."). *But see Olivera-Morales v. Sterling Onions,* 322 F. Supp. 2d 211, 216-17 (N.D.N.Y. 2004); *Flower v. Mayfair Joint Venture*, 2000 WL 272187, at *6 (S.D.N.Y. Mar. 13, 2000); *Manzi v. DiCarlo*, 62 F. Supp. 2d 780, 788 (E.D.N.Y. 1999) (all espousing the view that represented parties may also invoke the exception). Since plaintiffs were represented by counsel before the NYSHRL, they cannot invoke the exception; however, because the Second Circuit has neither approved nor rejected that interpretation, the Court will address the merits of the exception.

The existence of a "clear identity of interest" depends on four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the [administrative] complaint; 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that

7

> for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the [administrative] proceedings; 3) whether its absence from the [administrative] proceedings resulted in actual prejudice to the interests of the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Johnson*, 931 F.2d at 209-10 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

With respect to the first factor, plaintiffs were undoubtedly aware of Ben Wong's alleged role at the time they filed their administrative charges because those charges consist solely of a letter from plaintiffs' counsel informing Ben Wong of Jenny Wong's alleged discriminatory animus, and demanding that he take correctly action, including reinstatement. *See* Affirmation of Nils C. Shillito (Aug. 22, 2008), Exs. B & C. Plaintiffs' counsel was also clearly aware of York Town and Teahouse because he submitted to the NYSDHR tax forms listing those entities as Yip's employer. *See* Pls.' Mem. of Law, Ex. 4. In sum, plaintiffs clearly had enough knowledge to assert before the NYSDHR their theory that the unnamed defendants were just as liable as Board Wok and Jenny Wong.

The second factor also weighs strongly against plaintiffs. Notwithstanding plaintiffs' argument to the contrary, Board Wok is legally distinct from the unnamed defendants. Had they been brought into the administrative proceedings, the unnamed defendants would have undoubtedly argued that Board Wok was plaintiffs' sole employer and, therefore, that it was the only party in a position to engage in voluntary conciliation and compliance. As a result, their absence from the administrative proceedings can hardly be deemed an irrelevancy.

The last two factors are in equipoise: The third weighs in favor of plaintiffs; the unnamed defendants were not prejudiced by their absence from the administrative proceedings

8

because the NYSDHR took no conciliatory action. *See Goyette v. DCA Adver. Inc.*, 830 F. Supp. 737, 748 (S.D.N.Y. 1993) (third factor satisfied where agency took no conciliatory action). On the other hand, the fourth weighs against plaintiffs because there is no evidence that any of the unnamed defendants represented to plaintiffs that their relationship with them was to be through Board Wok.

Considering the four *Johnson* factors collectively, the Court concludes that there was no "clear identity of interest" between the named and unnamed defendants. *See Perez v. International Bhd. of Teamsters, AFL-CIO*, 2002 WL 31027580, at *7 (S.D.N.Y. Sept. 11, 2002) ("Because the third factor is the only one that favors plaintiff, the identity of interest exception does not apply here."). Therefore, plaintiffs' Title VII claims against Ben Wong, York Town and Teahouse must be dismissed.

**B. Supplemental Jurisdiction**

As noted, the complaint contains two claims concerning an investment that Yip made in one of Ben T. Wong's restaurants.[4] The only basis for subject-matter jurisdiction over those claims is supplemental jurisdiction under 28 U.S.C. § 1367.

"Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to 'form part of the same case or controversy under Article III of the United States Constitution.'" *Briarpatch Ltd., v. Phoenix Pictures, Inc.*, 373 F.3d 296, 308 (2d Cir. 2004). To satisfy that standard, the claims must

---

[4]One of the causes of actions states: "Yip was damaged when defendant Ben T. Wong took investment funds from him, unilaterally decided to earmark profit, and kept a disproportional amount of profit for himself to the unreasonable exclusion of profit that legitimately belong[ed] to Yip." Compl. ¶ 75. The other states: "Ben T. Wong fraudulently kept for himself a disproportionate amount of profit from a mutual business enterprise when he refused to account for earnings and profit after repeated demands by Yip." *Id.* at ¶ 77.

"derive from a common nucleus of operative fact." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

The facts underlying the investment claims have nothing to do with discrimination. The only thing they have in common with plaintiffs' federal claims is that they are brought against Ben Wong. But claims do not share a "common nucleus of operative fact" merely because the parties are the same. *See Rivera v. Ndola Pharmacy Corp.*, 497 F. Supp. 2d 381, 395 (E.D.N.Y. 2007) ("Plaintiff's employment relationship is insufficient to create a 'common nucleus of operative fact' where it is the sole fact connecting plaintiff's federal . . . claim and the remaining state law claims."). Since there are no operative facts tying the investment claims to the discrimination claims, the Court lacks supplemental jurisdiction over them.

## MOTIONS TO DISMISS FOR FAILURE TO STATE A CLAIM

### A. Individual Liability Under Title VII

Ben Wong and Jenny Wong argue that the Title VII claims against them must be dismissed based on the the oft-cited axiom that there is no individual liability under Title VII. *See, e.g., Sassaman v. Gamache*, 566 F.3d 307, 315 (2d Cir. 2009) ("[I]ndividuals are not subject to liability under Title VII."). The actual legal principle, however, is more nuanced: The only liable party in a Title VII case is the plaintiff's "employer," a term defined as any "person engaged in an industry affecting commerce who has fifteen or more employees . . . *and any agent of such a person*." 42 U.S.C. § 2000e(b) (emphasis added). The emphasized language led one circuit court to conclude that "supervisory personnel and other agents of the employer are statutory 'employers' who may be held individually liable for discriminatory acts." *See Tomka v. Seiler Corp.*, 66 F.3d 1295, 1313 (2d Cir. 1995) (citing *Paroline v. Unisys Corp.*, 879 F.2d 100, 104 (4th Cir. 1989)). Most other circuit

courts, including the Second Circuit, had held that the "agent" provision was a "simple expression of respondeat superior." *Id.* (citing cases).

It is now uniformly understood that "individual defendants with supervisory control over a plaintiff may not be held personally liable under Title VII." *Id.; see also Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998) (implicitly overruling *Paroline*). Therefore, Jenny Wong – who is alleged to have been only plaintiffs' manager – cannot be held liable under Title VII.

It does not follow, however, that a plaintiff's true "employer" cannot be held liable as such merely because he or she is an individual. *Cf. EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1280 (7th Cir. 1995) ("[N]o party disputes that a sole proprietor who employs more than fifteen people in his business would be liable as an 'employer' under the ADA, even though not liable in his purely individual capacity."). Unlike Jenny Wong, Ben Wong *is* alleged to have been plaintiffs' employer; therefore, he is – at least for purposes of Rule 12(b)(6) – potentially liable under Title VII. Since, however, the Court has already held that the Title VII claims against Ben Wong must be dismissed because he was not named in plaintiffs' administrative complaints, the issue is academic.

**B. Liability Under the NYSHRL**

"[T]he Human Rights Law does not provide a private cause of action to New York residents discriminated against outside of New York by foreign corporations." *Sorrentino v. Citicorp*, 755 N.Y.S.2d 78, 79 (1st Dep't 2003) (citing N.Y. Exec. L. § 298-a). According to the complaint, Board Wok is a New Jersey corporation and the discriminatory conduct occurred in New Jersey. Thus, plaintiffs' NYSHRL claims against Board Wok must be dismissed.

Jenny Wong argues that dismissal of the NYSHRL claims against Board Wok also

requires dismissal of the NYSHRL claims against her. In contrast to Title VII, a supervisor may be held individually liable under the NYSHRL if her or she "actually participates in the conduct giving rise to [the] discrimination." *Feingold v. New York*, 366 F.3d 138, 157 (2d Cir. 2004) (quoting *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1317 (2d Cir. 1995)). This difference ultimately stems from the NYSHRL's "aid or abet" provision, which Title VII lacks:

> [Section] 296(6) of the [NYSHRL] states that it shall be an unlawful discriminatory practice 'for any person to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this article, or attempt to do so.' Based on this language, several courts have [held] that a defendant who actually participates in the conduct giving rise to a discrimination claim may be held personally liable under the [NYSHRL].

*Tomka*, 66 F.3d at 1317 (quoting N.Y. Exec. L. § 296(6)). As Jenny Wong points out, it logically follows that "liability must first be established as to the employer/principal before accessorial liability can be found as to an alleged aider and abettor." *DeWitt v. Lieberman*, 48 F. Supp. 2d 280, 293 (S.D.N.Y. 1999) (citing *Murphy v. ERA United Realty*, 674 N.Y.S.2d 415, 417 (2d Dep't 1998)). The complaint, however, alleges that plaintiffs and Jenny Wong all effectively worked for Ben Wong, not Board Wok. Ben Wong is apparently a New York resident, and has not moved to dismiss the NYSHRL claims against him. Since Ben Wong is potentially liable as an "employer/principal" under the NYSHRL, Jenny Wong is potentially liable as an aider and abettor.

**D. Chan's Sex Discrimination Claim**

Chan alleges that she "was fired because Jenny [Wong] considered her too old, slow and unable to speak English." Compl. ¶ 58, 62. As defendants apparently concede, other allegations in the complaint support Chan's claims of race and/or national origin discrimination. *See id.* ¶ 55 ("Jenny frequently told Chan about the superiority of Malaysian workers over Chinese workers."),

12

¶ 61 ("Jenny hired two Malaysian workers to replace Chan after she was terminated."). There are, however, no similar allegations supporting Chan's claim that she was fired based on her sex.

Under the standard recently articulated by the Supreme Court, a plaintiff must plead sufficient "factual content [to allow] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Chan fails to satisfy that standard with respect to her sex discrimination claim, which, accordingly, must be dismissed.

## CONCLUSION

Defendants' converted motions for summary judgment on the timeliness issue are denied. Their motions to dismiss are granted as to: (1) all Title VII claims against Ben Wong, Jenny Wong, York Town and Teahouse; (2) all NYSHRL claims against Board Wok; (3) Zheng's investment claims (i.e., the fifth and sixth claims in the complaint) against Ben Wong; and (4) Chan's sex discrimination claim against all defendants. In all other respects, the motions are denied. Thus, the case will proceed on (1) the Title VII claims against Board Wok; and (2) the NYSHRL claims against Ben Wong, Jenny Wong, York Town and Teahouse. Regardless of their statutory basis, Chan's claims are limited to theories of race and national origin discrimination.

**SO ORDERED.**

_____
FREDERIC BLOCK
Brooklyn, New York                     Senior United States District Judge
August 24, 2009